**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANDON M. WILBORN** | **:** | |
| Plaintiff | **:** | |
| | **:** | |
| **v.** | **:** | Civil Action No. _____ |
| | **:** | |
| **JEFFERSON B. SESSIONS III,** | **:** | |
| Attorney General of the United | **:** | |
| States | **:** | |
| | **:** | |
| **THOMAS E. BRANDON,** | **:** | |
| Acting Director, Bureau of Alcohol, | **:** | |
| Tobacco, Firearms, and Explosives | **:** | |
| | **:** | |
| **CHRISTOPHER WRAY,** | **:** | |
| Director of the Federal Bureau of | **:** | |
| Investigation | **:** | |
| | **:** | |
| **UNITED STATES OF** | **:** | |
| **AMERICA,** | **:** | |
| Defendants | **:** | |

## PLAINTIFF'S BRIEF IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I.   **Introduction** ................................................................................................................ 1

II.  **Statement of Facts** ..................................................................................................... 2

III. **Argument** ..................................................................................................................... 4

   a. Plaintiff is Likely to Succeed on the Merits ............................................................ 4

      i.   *Governing Law* ..................................................................................................... 4

      ii.  *ATF's Prior Determination* ............................................................................... 5

      iii. *A commitment, pursuant to 50 P.S. § 7302, is insufficient under the Fifth Amendment, due to the lack of due process, to trigger a disability, pursuant to 18 U.S.C. § 922(g) (4)* ................................................................................................................ 7

         1. **A Section 302 Commitment Violates Procedural Due Process** ............................ 9

           i.   *The Second Amendment is a protected liberty and property interest* ................... 10

           ii.  *The procedures provided by Section 302 of the MHPA fail to comport with the requirements of due process* ................................................................................. 11

           1.   *The absence of procedural due process in Section 302* ........................................ 12

           2.   *The standard of proof necessary for a 302 commitment is insufficient under the United States Supreme Court's holding in Addington* ........................................... 14

           3.   *The Pennsylvania Supreme Court recently held that Section 302 lacks all forms of due process, including any way to challenge a 302 commitment* ......................... 15

           4.   *ATF previously admitted that Section 302 was legally insufficient due to "the lack of due process"* ................................................................................................... 16

           5.   *The First Circuit Court of Appeals previously held that an almost identical statute was legally insufficient* ......................................................................................... 17

      iv.  *Judge Kim R. Gibson's decision in Franklin v. Sessions* ................................. 17

      v.   *Other Courts Have Found Similar Evaluations do not Trigger the Prohibition Contained in 18 U.S.C. 922(g)(4)* ..................................................................... 19

         1. **U.S. v. Hansel** ...................................................................................................... 19

         2. **U.S. v. Giardina** .................................................................................................. 20

         3. **U.S. v. Rehlander** ............................................................................................... 21

         4. **Tyler v. Hillsdale County Sheriff's Department** ............................................... 21

   b. Plaintiff is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief ........ 22

c. The Balance of Equities Tips in the Plaintiff's Favor.........................................23

d. An Injunction is in the Public Interest ...............................................................24

e. No Bond or Other Security Payment is Required as a Condition of Relief......................24

**IV. Conclusion** ..............................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Acierno v. New Castle County,* 40 F.3d 645 (3rd Cir. 1994) ...................................................... 22

*ACLU of Ky. v. McCreary County, Ky.*, 354 F.3d 438 (6th Cir.2003) ........................................ 22

*Addington v. Texas*, 441 U.S. 418 (1979) .................................................................................... 14

*Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000) .............................................................................. 10

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) ...................... 23

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) ......................................................................... 23

*Barry v. Barchi*, 443 U.S. 55 (1979) ............................................................................... 11, 12, 13

*Bartley v. Kremens*, 402 F.Supp. 1039 (E.D.Pa. 1975) ............................................................... 14

*Benn v. Universal Health System, Inc.*, 371 F.3d 165 (3d Cir. 2004) .................................... 11, 13

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ................................................................... 11, 12, 13

*Carey v. Piphus*, 435 U.S. 247 (1978) ..................................................................................... 9, 10

*Cipriani v. Lycoming County Housing Authority*, 177 F.Supp.2d 303 (M.D. Pa. 2001) ..................... 10, 11

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) ...................................... 11, 12

*Daniels v. Williams*, 474 U.S. 327 (1986) ..................................................................................... 9

*De Leon v. Perry*, 975 F. Supp. 2d 632 (W.D. Tex. 2014) ........................................................... 24

*Deerfield Med. Center v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981) ...................... 22

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................................................ 8, 22

*Dixon v. Attorney Gen. of Pa.*, 325 F. Supp. 966 (M.D. Pa. 1971) .......................................... 12

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................................ 22

*Ezell v. City of Chicago*, 651 F. 3d 684 (7th Cir. 2011) ............................................................ 23

*Frank's GMC Truck Ctr., Inc. v. Gen Motors Corp.*, 847 F.2d 100 (3d Cir. 1988) ................... 24

*Franklin v. Sessions*, 291 F.Supp.3d 705 (W.D. Pa. 2017) ............................................... passim

*Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013) ................................................................... 22

*Higgins v. Beyer*, 293 F.3d 683 (3d Cir. 2002) ................................................................. 10

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) .............................................. 10

*Howard v. Grinage*, 82 F.3d. 1343 (6th Cir. 1996) .......................................................... 9

*In re Hancock*, 719 A.2d 1053 (Pa. Super. Ct. 1998) ...................................................... 14

*In re Nancy White Vencil*, 638 Pa. 1 (2017) ...................................................... 10, 12, 15

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir.1989) .................... 22

*Jackson Women's Health Org. v. Currier*, 760 F.3d 448 (5th Cir. 2014) ......................... 23

*Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123 (1951) ...................................... 9

*Loudermill v. Cleveland Bd. Of Educ.*, 721 F.2d 550 (6th Cir. 1983) ............................... 9

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) ........................................................ 9, 11, 12

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ...................................................................... 9

*Matthews v. Eldridge*, 424 U.S. 319 (1976) .............................................................. 11, 12

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .................................................... 8, 24

*New Jersey Payphone Ass'n, Inc. v. Town of W. N.Y.*, 299 F.3d 235 (3d Cir. 2002) .................. 7

*Palko* v. *Connecticut*, 302 U.S. 319 (1937) ................................................................... 10

*Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250 (3d Cir. 1994) ...................... 10

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ................................................. 4

*Rochin v. California*, 342 U.S. 165 (1952) ..................................................................... 10

*Silvester v. Becerra*, 138 S.Ct. 945 (2018) .................................................................... 24

*Snyder* v. *Massachusetts*, 291 U.S. 97 (1934) ............................................................. 10

*Temple University v. White*, 941 F.2d 201 (3rd Cir. 1991) ............................................... 24

*Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175 (5th Cir. 1975) ............................................... 4

*Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678 (6th Cir. 2016) ...................... 21

*U.S. v. Giardina*, 861 F.2d 1334 (5th Cir. 1988) ...................................................... 19, 20

*U.S. v. Hansel*, 474 F.2d 1120 (8th Cir. 1973) ......................................................... 18, 19

*U.S. v. Rehlander*, 666 F.3d 45 (1st Cir. 2012) .................................................................. 20

*United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224 (1973) .............................................. 8

*United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012) ..................................................... 17

*Vitek v. Jones*, 445 U.S. 480 (1980) ...................................................................................... 10

*Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017) ......................................................... 22

*Weimer v. Amen*, 870 F.2d 1400 (8th Cir. 1989) .................................................................. 8

*Willner v. Comm. on Character & Fitness*, 373 U.S. 96 (1963) .......................................... 8

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............................................. 4

*Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412 (3d Cir. 2010) ......................... 24

## Statutes

18 U.S.C. § 921 .................................................................................................................... 5

18 U.S.C. § 922(g)(4) .................................................................................................... passim

18 U.S.C. § 922(h) ................................................................................................................ 19

5 Neb.Rev.Stat. § 83-328 ................................................................................................. 18, 19

5 U.S.C. § 552 ...................................................................................................................... 5

50 P.S. § 7302 ............................................................................................................... passim

50 P.S. § 7303 ............................................................................................................... passim

## Other Authorities

Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267 (1975) ...................................... 8

## Rules

Fed. R. Civ. P. 65(c) ............................................................................................................. 24

## Treatises

Nowak & Rotunda, *Constitutional Law* (5th ed. 1995) ........................................................ 8

## Regulations

27 C.F.R. § 478.11 ......................................................................................................... passim

## Constitutional Provisions

U.S. Const. amend. V .................................................................................................................... 1, 6, 7, 8

Plaintiff Brandon M. Wilborn, (hereinafter "Mr. Wilborn" or "Plaintiff") by and through his counsel, hereby submits this Brief in Support of his Motion for Preliminary Injunction.

## I.      Introduction

Mr. Wilborn has filed suit, complaining that the Defendants have collectively and individually prohibited a particular class of persons, including the Plaintiff, from obtaining, possessing, keeping, bearing, or otherwise utilizing firearms and ammunition as a result of an isolated incident of involuntary examination and treatment pursuant to Section 302 of Pennsylvania's Mental Health and Procedures Act ["MHPA"], 50 P.S. § 7101, *et seq.*, in the absence of a statutory or regulatory prohibition and in the absence of their Fifth Amendment rights to due process.

Despite Congress expressly defining prohibiting criteria in 18 U.S.C. § 922(g)(4), ATF's prior acknowledgement that an involuntary examination and treatment pursuant to Section 302 did not comport with that criteria, and Judge Kim R. Gibson's decision in *Franklin v. Sessions*, 291 F.Supp.3d 705, 716-18 (W.D. Pa. 2017) [1] wherein he held that a 302 examination and treatment does not trigger a prohibition under 18 U.S.C. § 922(g)(4), Defendants have denied Plaintiff, and those similarly situated, the ability to exercise their Second Amendment rights. Accordingly, a preliminary injunction is warranted and necessary to protect against the ongoing evisceration of a constitutional right, in the absence of any statutory or regulatory prohibition.

---

[1] All of the Defendants in this instant matter were a party to the *Franklin* litigation.

**II.      Statement of Facts**

On April 7, 2003, Mr. Wilborn was involuntarily examined and treated pursuant to 50 P.S. § 7302 ["Section 302 of the MHPA"] in Chester County, Pennsylvania. Consistent with Section 302 of the MHPA, at no point during this involuntary examination or treatment was Mr. Wilborn provided with an attorney, able to confront or offer witnesses, challenge or submit evidence, have a hearing, or be placed in front of a neutral arbiter. Thus, after the stroke of a doctor's pen, Mr. Wilborn was treated for approximately 72 hours and released on April 10, 2003. Consistent with the limitations of Section 302 of the MHPA, Mr. Wilborn was neither adjudicated incompetent nor involuntarily committed to a mental institution. [2]

On or about May 3, 2018, Mr. Wilborn desiring to purchase, possess and utilize firearms for self-defense and for defense of his family, including within his home, attempted to purchase a firearm and was denied by the National Instance Check System ("NICS"), which is administrated by the Federal Bureau of Investigation ("FBI") and overseen by Defendant Christopher Wray. Believing the denial to be erroneous, Mr. Wilborn appealed the denial by NICS and received a letter dated May 8, 2018, which stated in part that "[y]our transaction's prohibition is under Title 18, United States Code (U.S.C.), Section 922(g)(4): 'A person who has been adjudicated as a mental defective or who has been committed to a mental institution.'" A copy of the letter from NICS to Mr. Wilborn is attached hereto and incorporated herein as Exhibit A.

Mr. Wilborn then retained Attorney Joshua Prince to represent him in challenging the denial. Attorney Prince wrote a letter dated June 27, 2018 to NICS challenging Mr. Wilborn's

---

[2] For Mr. Wilborn, or someone similarly situated, to be involuntarily committed to a mental institution or, *arguendo*, adjudicated incompetent, the individual would have to be committed pursuant to 50 P.S. § 7303 [Section 303 of the MHPA]. While a Section 303 commitment may or may not constitute an adjudication of incompetency, such issue is not before this Court, as Mr. Wilborn was only evaluated and treated pursuant to Section 302. He was never subjected to a Section 303 commitment.

denial pursuant to 18 U.S.C. 922(g)(4). A copy of the correspondence from Attorney Prince to NICS is attached hereto and incorporated herein as Exhibit B. In part, the correspondence stated Judge Kim R. Gibson of the United States District Court for the Western District of Pennsylvania previously held that a 302 examination and treatment does not trigger a prohibition under 18 U.S.C. § 922(g)(4) in *Franklin v. Sessions*, 291 F.Supp.3d 705, 716-18 (W.D. Pa. 2017). *Id*.

The letter also noted that pursuant to the NICS Improvement Amendments Act ("NIAA"), the FBI was precluded from keeping any mental health commitments, which do not trigger a disability under Section 922(g)(4), including where a commitment occurs in the absence of due process. *Id*. FBI provided a final response on August 2, 2018, upholding its original determination without addressing the *Franklin* decision of the NIAA implications. A copy of the final response from FBI is attached hereto and incorporated herein as Exhibit C.

Thus, after receiving information of Mr. Wilborn's involuntary examination pursuant to Section 302 of the MHPA, Defendants added him to the NICS database as a prohibited person, despite the fact such an examination does not meet the statutory requirements set forth by the United States Congress in 18 U.S.C. 922(g)(4). But for the Defendants active enforcement of the prohibition contained in Section 922(g)(4) against the Plaintiff and those similarly situated, Mr. Wilborn would purchase, possess and utilize a firearm for self-defense and for defense of his family, including within his home. Defendants' active enforcement of the prohibition and the threat of arrest, prosecution, fine and/or incarceration has thus deprived the Plaintiff and those similarly situated of exercising their Second Amendment rights to keep and bear arms, in the absence of a statutory or regulatory prohibition and in the absence of due process.

### III.        Argument

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). These factors are measured along a "sliding scale . . . which takes into account the intensity of each [factor] in a given calculus." *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975) (citation omitted). Each of these four factors weighs heavily in Plaintiff's favor, as he is being erroneously stripped of a constitutional right.

The Third Circuit has further stated that

> a movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

     a.  <u>Plaintiff is Likely to Succeed on the Merits</u>

        i.  *Governing Law*

18 U.S.C. § 922(g) provides the following:

(g) It shall be unlawful for any person –

…

> (4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

> …

> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Congress defined a variety of terms found in the Gun Control Act of 1968 ("GCA") in 18 U.S.C. § 921. However, the statute is devoid of defining the phrase "committed to a mental institution".[3] ATF, relative to its authority under the Administrative Procedure Act ("APA"), 5 U.S.C. § 552, *et seq*., promulgated regulations for the GCA. These regulations defined a variety of terms, including "committed to a mental institution". 27 C.F.R. § 478.11 defines the term to mean

> A formal commitment of a person to a mental institution *by a court, board, commission, or other lawful authority*. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. *The term does not include a person in a mental institution for observation* or a voluntary admission to a mental institution.

 (Emphasis added).


### ii.  ATF's Prior Determination

ATF previously held that a commitment, pursuant to Section 302 of the MHPA, was insufficient for purposes of triggering a disability, pursuant to 18 U.S.C. § 922(g) (4). A copy of the determination is attached hereto and incorporated herein as Exhibit D. Specifically, the determination stated that "[a] involuntary detention under 50 PA. CONS. STAT. § 7302 does not constitute a commitment to a mental institution within the meaning of 27 C.F.R. § 478.11. Section 7302 provides for temporary emergency measures and as such falls short of the 'formal commitment' described in section 478.11."

---

[3] While not at issue in this instant matter, the statute also fails to define the phrase "adjudicated as a mental defective". ATF promulgated a definition for this term as well, which can be found in 27 C.F.R. § 478.11.

The determination also noted that unlike a person being detained pursuant to Section 7303 of the MHPA, a person being involuntarily detained under Section 7302 is *not* provided a variety of due process rights, including counsel, notice, and a hearing. Juxtaposing the process for a detention under Section 7302 with that of a commitment under Sections 7303, 7304, and 7305, the distinction between a detention and commitment, which would be encompassed under the definition found in Section 478.11, becomes even clearer.

The letter concluded that "[g]iven the lack of due process provisions afforded [by Section 7302], the limited duration of detention…, [that its] apparent primary purpose is to provide mental health officials time to observe a detainee and make an assessment, *and the existence of more formal commitment procedures*…we conclude that a detention under [Section 7302] *does not constitute a commitment for the purposes of 18 U.S.C. § 922(g) (4)*." (Emphasis added).

Noteworthy is that the definition found in 27 C.F.R. § 478.11 specifically states that "[t]he term does not include a person in a mental institution for observation…" Thus, by definition and ATF's own previous conclusions, an involuntary detention and subsequent treatment pursuant to Section 7302 of the MHPA *does not* constitute an involuntary commitment for the purposes of the prohibition contained in 18 U.S.C. § 922(g) (4). Furthermore, Judge Gibson in the *Franklin* decision specifically stated that "[t]his Court agrees with Special Agent Duchnowski's analysis in his September 4, 1998 letter." 291 F.Supp.3d at 717, footnote 13.

iii. *A commitment, pursuant to 50 P.S. § 7302, is insufficient under the Fifth Amendment, due to the lack of due process, to trigger a disability, pursuant to 18 U.S.C. § 922(g) (4)* [4]

Initially, it is important to note that Mr. Wilborn does not, in this action, contend that Section 302 of the MHPA must be ruled, in total, unconstitutional; rather, he merely contends that as a result of the lack of procedural and substantive due process provided, Section 302 is legally insufficient to putatively strip an individual of a core constitutional right, including the Right to Keep and Bear Arms, under federal law.

While Defendants contend that an involuntary commitment for an emergency mental health evaluation, pursuant to 50 P.S. § 7302 of the MHPA, results in the permanent deprivation of the individual's Second Amendment right to purchase, possess and utilize firearms and ammunition, this contention comes in spite of the undisputable fact that a 302 treatment and evaluation is perfected in the absence of all tenants of due process, as required by the Fifth Amendment to the U.S. Constitution, as the individual is not: (1) advised of the right to have an attorney; (2) provided an attorney; (3) provided a right to confront witnesses; (4) provided an opportunity to offer witnesses; (5) provided an opportunity to challenge evidence; (6) provided any opportunity to submit evidence; (7) provided a hearing; (8) provided a neutral arbiter; or, (9) provided a verbatim transcript or full record of the commitment proceedings. *See,* 50 P.S. § 7302. Instead, a 302 treatment and evaluation is merely perfected by a doctor's signature certifying that the individual needs "immediate treatment," where, even more disconcerting, the

---

[4] This constitutional claim is made in the alternative to the extent this Court would find that a Section 302 commitment is an involuntary commitment for purposes of 18 U.S.C. § 922(g) (4), as defined by 27 C.F.R. § 478.11. Plaintiff specifically acknowledges that the Court should not reach the constitutional issues – pursuant to the constitutional avoidance doctrine – to the extent it can provide relief on non-constitutional grounds. *See*, *New Jersey Payphone Ass'n, Inc. v. Town of W. N.Y.*, 299 F.3d 235, 248 (3d Cir. 2002).

doctor is not required to have any mental health training or certifications. 50 P.S. § 7302(b). If this was not egregious enough, although the Government now contends that a 302 commitment is sufficient to trigger a disability under Section 922(g)(4), as discussed *supra* ATF previously issued a determination that a 302 commitment was legally insufficient to trigger a disability pursuant to Section 922(g)(4) because of the "the *lack of due process provisions* afforded by 50 Pa. Cons. [sic] Stat. § 7302, the limited duration of a detention pursuant to it, the fact that its apparent primary purpose is to provide mental health officials to observe a detainee and make an assessment, and the existence of more formal commitment procedures under Pennsylvania law." More disconcerting, the Government's position is in direct defiance of Judge Gibson's decision in *Franklin*. 291 F.Supp.3d at 716-18. .

As the United States Supreme Court held in *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), that an individual has a constitutional right, pursuant to the Second Amendment, to Keep and Bear Arms, which the Court found was incorporated against the states in *McDonald v. City of Chicago*, 561 U.S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010), an individual cannot be stripped of that constitutional right in the absence of strict adherence to due process. *See e.g.*, *Willner v. Comm. on Character & Fitness*, 373 U.S. 96, 102-03 (1963); *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 244-45 (1973); Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267 (1975); Nowak & Rotunda, *Constitutional Law* §§ 13.7 & 13.8, at 547-557 (5th ed. 1995).

The Fifth Amendment to the U.S. Constitution provides, *inter alia*, that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The cornerstone of due process is the prevention of abusive governmental power. *Weimer v. Amen*, 870 F.2d 1400, 1405 (8th Cir. 1989) (citing to *Daniels v. Williams*, 474 U.S. 327, 330-31

(1986)). Thus, the issue becomes whether Section 302, *facially* and *as-applied*, violates the procedural and substantive due process protections of the Fifth Amendment.

## 1.   A Section 302 Commitment Violates Procedural Due Process

Due process of the law has a dual aspect – substantive and procedural. *Howard v. Grinage*, 82 F.3d. 1343, 1349 (6th Cir. 1996).

> A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a substantive choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision. The goal is to minimize the risk of substantive error, *to assure fairness in the decision-making process*, and to assure that the individual affected has a participatory role in the process. The touchstone of procedural due process is the fundamental requirement that an individual be given *the opportunity to be heard "in a meaningful manner*."

*Id.* (citing to *Loudermill v. Cleveland Bd. Of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983) (Emphasis added)

As declared by United States Supreme Court in *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980):

> The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision making process. *See Carey v. Piphus*, 435 U.S. 247, 259-262, 266-267 (1978). The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. *See Mathews v. Eldridge*, 424 U.S. 319, 344 (1976). At the same time, it preserves both the appearance and reality of fairness, 'generating the feeling, so important to a popular government, that justice has been done,' *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 172 (1951) (Frankfurter, J., concurring), by ensuring that *no person will be deprived of his interests in the absence of a proceeding in*

*which he may present his case with assurance that the arbiter is not predisposed to find against him.* (emphasis added).

As further declared by the United States Supreme Court, the right to procedural due process is "absolute." *Carey v. Piphus*, 435 U.S. 247, 266 (1978), *Higgins v. Beyer*, 293 F.3d 683, 694 (3d Cir. 2002). The right to due process is triggered when the government seeks to deprive citizens of legally cognizable liberty or property interests. *See*, *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1256 (3d Cir. 1994); *Cipriani v. Lycoming County Housing Authority*, 177 F.Supp.2d 303, 319 (M.D. Pa. 2001). Stated in a slightly different manner, a *prima facie* violation of procedural due process occurs where a plaintiff demonstrates that (1) he was deprived of a protected liberty or property interest and (2) the procedures afforded him failed to comport with the requirements of due process. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (*citing, Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

i. <u>The Second Amendment is a protected liberty and property interest</u>

The liberty or property interests to which due process attaches are those identified in the text of the federal and state constitutions or which are otherwise considered fundamental rights. *Vitek v. Jones*, 445 U.S. 480, 495-96 (1980); *Rochin v. California*, 342 U.S. 165, 169 (1952); *Snyder* v. *Massachusetts*, 291 U.S. 97, 105 (1934); *Palko* v. *Connecticut*, 302 U.S. 319, 325 (1937). As discussed *supra*, this matter involves Defendants' contention that Mr. Franklin and individuals similarly situated are stripped of their constitutional right to Keep and Bear Arms, as protected by the Second Amendment, as a result of a mere 302 evaluation and treatment, which fails to provide any form of hearing. Even more egregious, as discussed *infra*, the Pennsylvania Supreme Court in *In re Nancy White Vencil* recently held that there exists no legal process by

which an individual can challenge a 302 commitment after release. Clearly, Defendants'

contention implicates the deprivation of a constitutional right, for which there exists a liberty and

property interest and therefore triggers the strictures of due process.

<br>

> ii. _The procedures provided by Section 302 of the MHPA fail to comport with the requirements of due process_

Once a protected liberty or property interest is identified, at an absolute minimum,

procedural due process requires "fair [and formal] notice" and "the opportunity to be heard"

before a fair and impartial tribunal. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also*,

*Marshall v. Jerrico, Inc.*, 446 U.S. at 242. Under normal circumstances, an informal *pre*-

deprivation hearing followed by a more comprehensive, *post*-deprivation hearing must be

provided. *Cipriani*, 177 F. Supp.2d at 319; *citing Cleveland Board of Education v. Loudermill*,

470 U.S. 532, 545-546 (1985). In certain emergency situations, especially where the loss of

rights will be addressed in an expeditious *post*-deprivation hearing, the *pre*-deprivation hearing

may be omitted. *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971); *Benn v. Universal Health*

*System, Inc.*, 371 F.3d 165, 174 (3d Cir. 2004). However, even where an exigent situation exists

permitting a deprivation in the absence of an initial hearing, where a statute fails to provide the

*timeframe* for a *post*-deprivation hearing, it violates procedural due process, even if the statute

provides for a *post*-deprivation hearing. *Barry v. Barchi*, 443 U.S. 55, 66 (1979).

## 1. The absence of procedural due process in Section 302

It cannot be disputed that Section 302 lacks all the procedural safeguards required by due process, as even recently acknowledged by the Pennsylvania Supreme Court in *In re Nancy White Vencil*, discussed *infra*.

In point of fact, an individual is not (1) advised of the right to have an attorney; (2) provided an attorney; (3) provided a right to confront witnesses; (4) provided an opportunity to offer witnesses; (5) provided an opportunity to challenge evidence; (6) provided any opportunity to submit evidence; (7) provided a hearing;[5] (8) provided a neutral arbiter; or, (9) provided a verbatim transcript or full record of the commitment proceedings. *See*, 50 P.S. § 7302.

Some of these same issues caused the District Court for the Middle District of Pennsylvania in 1971 to issue an injunction regarding the enforcement of a prior version of Pennsylvania's mental health act. *See*, *Dixon v. Attorney Gen. of Pa.*, 325 F. Supp. 966, 973-74 (M.D. Pa. 1971). There, the court required that any individual being involuntarily committed be (1) "informed of his right to counsel and an attorney shall be appointed to represent him unless he can afford to retain an attorney"; (2) "entitled to independent expert examination and assistance in preparation for the hearing, through court appointment where the subject cannot afford to retain these services"; (3) "entitled to a full hearing at which he shall have the right to present evidence in his own behalf, to subpoena witnesses and documents, and to confront and cross-examine all witnesses against him"; (4) that "[t]he standard for commitment and the

---

[5] The MHPA's failure to provide for *any* hearing, whether *pre-* or *post*-deprivation, relative to a 302 commitment is, alone, dispositive of Plaintiff's claim, as Section 302 cannot meet the minimum requirement of a hearing, as required by the United States Supreme Court's legion of cases. *See e.g.*, *Matthews*, 424 U.S. at 333; *Marshall v. Jerrico, Inc.*, 446 U.S. at 242; *Cleveland Board of Education v. Loudermill*, 470 U.S. at 545-546; *Boddie v. Connecticut*, 401 U.S. at 379; *Barry v. Barchi*, 443 U.S. at 66.

burden of proof shall be as follows: the evidence found to be reliable by the factfinder must establish clearly, unequivocally and convincingly that the subject of the hearing requires commitment because of manifest indications that the subject poses a present threat of serious physical harm to other persons or to himself"; and (5) "[t]here shall be a verbatim transcript and full record made of the commitment proceedings, and any member of the class committed pursuant to these proceedings shall have the right to state appellate court review, including provision for assistance of counsel and record and transcript without cost if he is unable to pay the cost thereof. Any person committed will be advised of his rights with respect to appeal by the court at the time of commitment." *Id*. at 974.

Even if, *arguendo*, it was determined that a 302 evaluation and treatment would constitute an emergency situation, which would allow for the omission of a *pre*-deprivation hearing consistent with the United States Supreme Court's holdings in *Boddie* and *Benn*, Section 302 would still be unconstitutional and therefore legally insufficient to strip one of a constitutional right under both of those decisions, as it does not provide for any *post*-deprivation hearing, and therefore, consistent with *Barchi*, would also be unconstitutional because the statute fails to provide any timeframe for a *post*-deprivation hearing.

Accordingly, it is explicitly clear, that a Section 302 commitment is legally insufficient due to the lack of due process afforded the individual.

## 2. The standard of proof necessary for a 302 commitment is insufficient under the United States Supreme Court's holding in Addington

In relation to the standard of proof necessary for an involuntary commitment, in order to "meet due process demands, the process has to inform the factfinder that the proof must be greater than the preponderance-of-the-evidence standard applicable to other categories of civil cases." *Addington v. Texas*, 441 U.S. 418, 432-33 (1979). Accordingly, the Court concluded that due process requires *at least* a clear and convincing evidentiary standard of proof, since an individual's physical liberty is not the only liberty interest at stake in a civil commitment proceeding – involuntary commitments bring with them "adverse . . . consequences," which may have a "very significant impact on the individual." *Id*. at 425-26, 432-33. In accordance therewith, an involuntary commitment may have "a more lasting abridgement of personal freedom than imprisonment for commission of a crime." *Bartley v. Kremens*, 402 F.Supp. 1039, 1046 (E.D.Pa. 1975), *vacated* and *remanded*, *Kremens v. Bartley*, 431 U.S. 119 (1977) (reversing on procedural grounds).

In relation to a 302 commitment, nowhere within the MHPA has the Pennsylvania General Assembly set-forth the standard of proof for civil commitments. While Plaintiff acknowledges that the Pennsylvania Superior Court has held that a clear and convincing standard is to be utilized in the context of 303 commitments (*In re Hancock*, 719 A.2d 1053, 1055 (Pa. Super. Ct. 1998)), Plaintiff is unaware of any court in Pennsylvania declaring that a clear and convincing standard of proof is required for a 302 commitment and even if, *arguendo*, a Pennsylvania court were to so hold, it would not change the fact that the lack of such standard

within the MHPA would fail to place the physicians performing 302 commitments on notice of the requisite standard.

As there is no standard of proof specified in the MHPA and there exists no evidence that Plaintiff was putatively committed pursuant to a clear and convincing standard of proof, his commitment, and those similarly situated, are legally insufficient to strip one of his/her right to Keep and Bear Arms.

> **3.** ***The Pennsylvania Supreme Court recently held that Section 302 lacks all forms of due process, including any way to challenge a 302 commitment***

Recently, the Pennsylvania Supreme Court in *In re Nancy White Vencil*, 638 Pa. 1 (2017). cert. denied sub nom. 137 S.Ct. 2298, 198 L.Ed.2d 751 (2017), reviewed the 302 commitment process in relation to a sufficiency challenge, for purposes of firearm ownership. After acknowledging that an individual is committed in the absence of due process by the mere signature of a physician and that "the MHPA does not provide for judicial review of a 302 commitment", the Court explained that, unlike with a 303 commitment, "[b]y legislative design, there is no judicial involvement in the decision to effectuate a 302 commitment and no right to appeal the physician's decision, and section 6111.1(g)(2) does not create a right to judicial intervention into a 302 commitment decision."  638 Pa. at 12, 17. Unfortunately for Ms. Vencil, as the Court acknowledged, she did "not challenge[] the due process protections provided by section 302 of the MHPA. Nor has she raised a due process argument in connection with her right to bear arms under the United States and/or Pennsylvania Constitutions." *Id*. at 19

Thus, even though Defendants previously issued a determination that a Section 302 commitment was legally insufficient for purposes of triggering a prohibition under Section

922(g)(4), the Pennsylvania Supreme Court has affirmed that not only is there no due process in a 302 commitment but moreover there is not even a statutory mechanism to challenge a commitment once released, and Judge Gibson issued the *Franklin* decision holding that a 302 evaluation and treatment does not trigger a prohibition under 18 U.S.C. § 922(g) (4), Defendants continue to contend that Plaintiff, and all other individuals similarly situated, are prohibited under Section 922(g)(4); thereby necessitating that this Court enjoin Defendants' conduct, policy and enforcement.

> **4. ATF previously admitted that Section 302 was legally insufficient due to "the lack of due process"**

As discussed supra, Defendant ATF previously issued a formal opinion stating that a Section 302 evaluation and treatment was insufficient to trigger a disability under 18 U.S.C. § 922(g) (4), due to the lack of due process. Specifically, it held:

> Given the *lack of due process provisions* afforded by 50 Pa. Cons. [sic] Stat. § 7302, the limited duration of a detention pursuant to it, the fact that its apparent primary purpose is to provide mental health officials to observe a detainee and make an assessment, and the existence of more formal commitment procedures under Pennsylvania law, we conclude that a *detention under 50 Pa. Cons. [sic] Stat. § 7302 does not constitute a commitment for purposes of 18 U.S.C. § 922(g) (4)*.

*See* Exhibit D (emphasis added).

Although Section 302 has not been amended or otherwise modified since the formal determination, there now exists a judicial determination from the Pennsylvania Supreme Court acknowledging the lack of due process afforded an individual under Section 302, and and Judge Gibson issued the *Franklin* decision holding that a 302 evaluation and treatment does not trigger a prohibition under 18 U.S.C. § 922(g) (4), Defendants now contend, contrary to their own determination and court decisions, that a Section 302 commitment is sufficient to trigger a

disability under Section 922(g)(4), *in the absence of due process*. Plaintiff respectfully requests

that this court estop Defendants from arguing inconsistent with their own prior determination.

> **5.  The First Circuit Court of Appeals previously held that an almost identical statute was legally insufficient**

The United States Court of Appeals for the First Circuit previously held that Maine's

involuntary commitment statute, which has further safeguards than Pennsylvania's, [6] was

insufficient to strip an individual of his/her Second Amendment rights, under Section 922(g)(4),

because of the lack of due process. *United States v. Rehlander*, 666 F.3d 45, 49 (1st Cir. 2012). It

is also important to point out that the First Circuit stated that its decision might be different "if

section 922 permitted one temporarily hospitalized on an emergency basis to recover, on

reasonable terms, a suspended right to possess arms on a showing that he now no longer posed a

risk of danger." *Id.*

> iv.  *Judge Kim R. Gibson's decision in Franklin v. Sessions*

Recently, Judge Kim R. Gibson of the United States District Court for the Western

District of Pennsylvania issued an opinion in *Franklin v. Sessions*, 291 F.Supp.3d 705 (W.D. Pa.

2017), where it held that a 302 evaluation and treatment did not trigger a prohibition pursuant to

---

[6] Maine's statute additionally requires a judge to sign off on the doctor's certification, which is
not required in Pennsylvania. *Id.* at 48.

18 U.S.C. § 922(g) (4). [7] While addressing whether Mr. Franklin was "adjudicated as a mental defective", the opinion stated

> …[t]he Court finds that a police officer, unspecified county employee, and physician do not constitute "other lawful authority" for the purposes of Section 922(g)(4) and 27 C.F.R. § 478.11. While a police officer, an unspecified county employee, and a physician may be a lawful authority for the purposes of requiring an involuntary emergency mental health examination for up to 120 hours, Section 922(g)(4) and 27 C.F.R. § 478.11 need not also view these individuals as "adjudicators" with the lawful authority to permanently restrict an enumerated constitutional right. Interpreting Section 922(g)(4) such that individual physicians and other non-neutral actors have lawful authority to wholly strip a person of their ability to a possess a firearm in perpetuity based on a non-adversarial, *ex parte* decision would raise serious constitutional concerns with the statute…

*Franklin*, 291 F.Supp.3d at 716.

The Court also examined Section 7302 of the MHPA in relation to the term "committed to a mental institution." The Court, like ATF had previously concluded, held that

> Even going beyond the specific facts of Mr. Franklin's situation, the terms of Section 302 of the MHPA describe mandated medical care of a temporary and observational nature. Section 302 of the MHPA provides only for involuntary medical treatment lasting up to 120 hours. *See* 50 Pa. Stat. and Cons. Stat. Ann. § 7302(d). And, this Pennsylvania statute, tellingly, never uses the term "commitment." *See id.* Instead, Section 302 of the MHPA consistently and uniformly uses the terms "involuntary emergency examination and treatment" or "emergency examination." *Id. By its own terms and effect, Section 302 of the MHPA does not provide for a commitment to a mental institution as defined by 27 C.F.R. § 478.11…*

(Emphasis added).

---

[7] Mr. Wilborn acknowledges that such an opinion is not binding on this Honorable Court, however, he encourages to Court to examine the well reasoned opinion which drew from conclusions of other courts, including the United States Courts of Appeals for the 1st Circuit.

v. *Other Courts Have Found Similar Evaluations do not Trigger the*
   *Prohibition Contained in 18 U.S.C. 922(g)(4)*

If there was any doubt left in this Court's mind that the Plaintiff would prevail on the

merits, the Court only need examine how other courts have decided similar matters.

### 1. *U.S. v. Hansel*

In 1973, the Eighth Circuit had to determine whether an individual was involuntarily

committed in *U.S. v. Hansel*, 474 F.2d 1120 (8th Cir. 1973). At the district court, the Government

held the position that the order of hospitalization constituted a commitment, however, on appeal

conceded that it was not prohibiting because there was no compliance with 5 Neb.Rev.Stat. § 83-

328. The statute required

> As soon as practicable after the certificate required by this act has been filed, the
> county board of mental health shall conclude its investigations. The board
> members shall find (1) whether the person alleged to be mentally ill is mentally
> ill; (2) if mentally ill, whether he should be admitted to a state hospital for the
> mentally ill; and (3) whether his legal settlement is in their county, and if not in
> that county where it is, if ascertained….Commitment by the county board of
> mental health will be completed only when certification from the superintendent
> of the state hospital concerned is properly filed with the referring county board of
> mental health.

5 Neb.Rev.Stat. § 83-328.

The Court found that "[t]here is nothing in 18 U.S.C. § 922(h) [8] which indicates an intent

to prohibit the possession of firearms by persons who had been hospitalized for observation and

examination, where they were found not to be mentally ill. The statute makes it clear that a

commitment is required." *Hansel*, 474 F.2d at 1123.

---

[8] At the time, 18 U.S.C. § 922(h)(4) stated that "It shall be unlawful for any person - … who has
been adjudicated as a mental defective or who has been committed to any mental institution; to
receive any firearm or ammunition which has been shipped or transported in interstate or foreign
commerce." *See* PL 90-618, October 22, 1968, 82 Stat. 1213.

Much like the case with Section 302 of the MHPA, a commitment required more than just an involuntary examination and observation for a limited period of time.

## 2. *U.S. v. Giardina*

The Fifth Circuit addressed a similar issue in *U.S. v. Giardina*, 861 F.2d 1334 (5th Cir. 1988). Once again, the state statute outlined a variety of requirements in order for an individual to have been committed.

> R.S. 28:53 provides that "[a] mentally ill person or a person suffering from substance abuse may be *admitted* and *detained* at a treatment facility for observation, diagnosis, and treatment for a period not to exceed fifteen days under an emergency certificate." R.S. 28:53(a)(1) (emphasis added). This emergency certificate may be issued by a physician, but only after an actual examination and a determination that the person is dangerous to himself or others. § 28:53(B). The examining physician is required to issue a physician's emergency certificate within 72 hours of the initial examination, detailing the objective findings that lead to the conclusion that detention is necessary. § 28:53(B)(2). For the physician's emergency certificate to be effective, it must demonstrate that "the person is unwilling or unable to seek voluntary admission." § 28:53(B)(5).
>
> The physician's emergency certificate provides "legal authority to transport a patient to a legal treatment facility and shall permit the director of such treatment facility to detain the patient...." § 28:53(F). Within 72 hours of this initial admission, however, a second examination by the coroner is a "necessary precondition to the person's continued confinement." § 28:53(G)(2). A patient may be "detained at a treatment facility for observation, diagnosis, and treatment for a period not to exceed 15 days...." § 28:53(A)(1). Patients confined by an emergency certificate may be subjected to "medication and treatment without their consent...." § 28:53(K). It is significant to note that to extend this involuntary detention beyond 15 days there must be a judicial commitment pursuant to La.R.S. 28:54.

*Giardina*, 861 F.2d at 1336.

Much like the MHPA, the Louisiana statute required that a judicial determination be made in order to extend the commitment. The Fifth Circuit determined that "[t]emporary, emergency detentions for treatment of mental disorders or difficulties, which do not lead to

formal commitments under state law, do not constitute the commitment envisioned by 18 U.S.C. § 922." *Id*. at 1337.

### 3. *U.S. v. Rehlander*

The First Circuit examined an emergency hospitalization after the seminal *Heller* decision in *U.S. v. Rehlander*, 666 F.3d 45 (1st Cir. 2012). The Court concluded that "…the right to possess arms (among those not properly disqualified) is no longer something that can be withdrawn by government on a permanent and irrevocable basis without due process. Ordinarily, to work a permanent or prolonged loss of a constitutional liberty or property interest, an adjudicatory hearing, including a right to offer and test evidence if facts are in dispute, is required." *Id*. at 48.

Moreover, as discussed *supra*, the Maine statutory scheme was similar to that of Pennsylvania's MHPA. "An observer has provided facts, a medical professional has assessed mental illness and a threat to the immediate safety of the subject or others, and hospitalization is limited to a few days unless voluntarily extended by the subject or extended by a court under protective procedures." *Id*.

The Court further found that "…in enacting section 922, nothing suggests that Congress had in mind temporary hospitalizations supported only by ex parte procedures." *Id*. at 50.

### 4. *Tyler v. Hillsdale County Sheriff's Department*

Mental health commitments were also addressed by the Sixth Circuit in *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678 (6th Cir. 2016). The Court began its examination of

the relevant background by stating "Federal regulations make clear that 'committed to a mental institution' applies only to persons who are involuntarily committed by an appropriate judicial authority following due process safeguards." *Id*. at 682.

A clear trend amongst the federal circuit courts has emerged in relation to the prohibition contained in 18 U.S.C. 922(g)(4). If there were no due process protections in place, it cannot trigger a prohibition pursuant to Section 922(g)(4).

*          *          *

For these reasons, it is explicitly clear that a Section 302 evaluation and treatment is legally insufficient, due to the lack of due process afforded, to strip and individual of a constitutional right. As such, it is clear that the Plaintiff and those similarly situated are likely to succeed on the merits.

b. <u>Plaintiff is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief</u>

"In general, to show irreparable harm a plaintiff must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *Acierno v. New Castle County,* 40 F.3d 645, 653 (3rd Cir. 1994) quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir.1989). A finding that a constitutional right "'is either threatened or in fact being impaired'… mandates a finding of irreparable injury." *Deerfield Med. Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). *See also Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (finding that "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'");

*ACLU of Ky. v. McCreary County, Ky.,* 354 F.3d 438, 445 (6th Cir.2003) (internal citations omitted) (When constitutional rights are threatened or impaired, irreparable injury is presumed.); Gordon v. Holder, 721 F.3d 638, 653 (D.C. Cir. 2013) ("'[A] prospective violation of a constitutional right constitutes irreparable injury.'").

Clearly, there are no other constitutional rights that are as directly linked to the ability to defend one's self as the right to keep and bear arms secured by the Second Amendment. The interest in self-defense is the "central component of the [Second Amendment] right itself." *Heller*, 554 U.S. at 599 (emphasis original). Further, "[b]y the time of the founding, the right to have arms had become fundamental for English subjects." *Heller*, 554 U.S. at 593.

As the Seventh Circuit explained "[t]he Second Amendment protects … intangible and unquantifiable interests. Heller held that the Amendment's central component is the right to possess firearms for protection. Infringements of this right cannot be compensated by damages." *Ezell v. City of Chicago*, 651 F. 3d 684, 699 (7th Cir. 2011) (citations and footnote omitted).

### c. The Balance of Equities Tips in the Plaintiff's Favor

Absent a preliminary injunction, the Plaintiff and those similarly situated will continue to suffer a deprivation of their fundamental constitutional right to keep and bear arms for defense of home and hearth while the Defendants suffer no harm at all. An injunction would not bar Defendants from enforcing the prohibition contained in 18 U.S.C. 922(g)(4) against individuals who were committed or those who had been adjudicated a mental defective as defined in 27 C.F.R. § 478.11, which would seemingly include, *arguendo*, those who are committed pursuant

to Section 303 of the MHPA.[9]

### d.  An Injunction is in the Public Interest

If a plaintiff proves "both" a likelihood of success on the merits and irreparable injury, it "almost always will be the case" that the public interest favors preliminary relief. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). However, most compelling is that idea that "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)); *De Leon v. Perry*, 975 F. Supp. 2d 632, 665 (W.D. Tex. 2014).

### e.  No Bond or Other Security Payment is Required as a Condition of Relief

The Third Circuit has stated that a "district court should consider the impact that a bond requirement would have on enforcement of [an important federal right or public interest] in order to prevent undue restriction [of them]." *Temple University v. White*, 941 F.2d 201, 220 (3rd Cir. 1991). The Third Circuit seems to have adopted a general rule that "'[w]hile there are exceptions, the instances which a bond may not be required are so rare that the requirement is almost mandatory.'" *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010) (quoting *Frank's GMC Truck Ctr., Inc. v. Gen Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988)). Fortunately for the Plaintiff, the impact of a bond requirement of an important federal right or public interest is one of those rare exceptions.

---

[9] *See* Fn. 2, *supra*.

Further, any injunction would not financially harm the Defendants. As such, this Honorable Court should waive the bond or security requirement found in Fed. R. Civ. P. 65(c). In the alternative, if this Court would disagree, Plaintiff would respectfully request that any bond be nominal and be set as $1.00 United States currency.

## IV.    Conclusion

"Nearly eight years ago, [the Supreme Court] declared that the Second Amendment is not a 'second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Silvester v. Becerra*, 138 S.Ct. 945, 952 (2018) (cert. denied), citing *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality opinion). As such, Plaintiff and those similarly situated respectfully requests this Honorable Court issue a preliminary injunction for the reasons set forth above.

Dated: August 23, 2018                          Respectfully Submitted,

Adam Kraut, Esq.
Attorney Id. No. 318482
AKraut@CivilRightsDefenseFirm.com
Joshua Prince, Esq.
Attorney Id. No. 306521
Joshua@CivilRightsDefenseFirm.com

Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(610) 845-3803 (t)
(610) 845-3903 (f)
Prince Law Offices, P.C.

646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803 ext 81115
610-845-3903 (fax)

Attorneys for Plaintiff