JLS IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRANDON M. WILBORN,

    Plaintiff,

v.

CIVIL ACTION
NO. 18-3597

JEFFERSON B. SESSIONS, III, et al.,[1]

    Defendants.

**ORDER**

**AND NOW**, this 6th day of February, 2019, after reviewing Plaintiff's Motion for Preliminary Injunction (Docket No. 2), all supporting and opposing papers, and after oral argument on the matter, it is hereby **ORDERED** that Plaintiff's motion is **DENIED WITHOUT PREJUDICE** with leave to re-file after further discovery is conducted.[2]

BY THE COURT:

_____
Jeffrey L. Schmehl, J.

---

[1] Mr. Wilborn named Jefferson B. Sessions, III, Attorney General of the United States, Thomas E. Brandon, Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Christopher Wray, Director of the Federal Bureau of Investigation, and the United States of America as Defendants. Under Federal Rule of Civil Procedure 25(d), their respective successors are automatically substituted.

[2] Currently before this Court is Mr. Wilborn's Motion for Preliminary Injunction challenging the preliminary applicability of Section 922(g)(4). (ECF Docket No. 2, at 1.) Under 18 U.S.C. § 922(g)(4), any person adjudicated as a "mental defective" or committed to a mental institution is prohibited from possessing any firearm or ammunition. 18 U.S.C. § 922(g)(4). Mr. Wilborn moves for preliminary injunction to protect his constitutional rights arguing his commitment under Section 302 of the Mental Health and Procedures Act ("MHPA") does not constitute a commitment for the purposes of 18 U.S.C. § 922(g)(4). Given the lack of facts presented at this stage in the litigation, we will deny Mr. Wilborn's preliminary injunction without prejudice with leave to re-file.

Granting a preliminary injunction requires the moving party establish four factors: "(1) whether the movant has a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the nonmoving party if the injunction is granted; and (4) whether granting the injunction is in the public interest." *Highmark, Inc v UPMC Health Plan, Inc*, 276 F.3d 160, 171 (3d Cir. 2001); *see also Winter v Natural Res Def Council, Inc.*, 555 U.S 7, 20 (2008).

Mr. Wilborn alleges Defendants "collectively and individually prohibited a particular class of persons, including the Plaintiff, from obtaining, possessing, keeping, bearing, or otherwise utilizing firearms and ammunition as a result of an isolated incident of involuntary examination and treatment" under Section 302 "in the absence of a statutory or regulatory prohibition and in the absence of their Fifth Amendment rights to due process." Section 302 allows for an involuntary examination and treatment not to exceeds 120 hours. PA ST 50 P.S. § 7302. Under Section 302, Mr. Wilborn contends, "treatment and evaluation" only requires a doctor's signature certifying the individual requires "immediate treatment," which violates the right to due process. (ECF Docket No 2, at 7-8.)

In 2003, Mr. Wilborn was involuntarily examined and treated under Section 302. (Id. at 2.) The institution "involuntarily examined and treated" Mr Wilborn for 72 hours before releasing him. (Id.) According to Mr. Wilborn, and consistent with Section 302, Mr Wilborn did not speak with a lawyer, present witnesses, submit evidence, or come before a neutral arbiter prior to his release. (Id.) Then in 2018, Mr. Wilborn attempted to "purchase, possess and utilize firearms for self-defense and for defense of his family" and his home. (Id ) But, the National Instance Check System ("NICS"), administrated by the FBI, denied Mr. Wilborn's application. (Id.) Mr. Wilborn appealed and received a letter stating: "[y]our transactions' prohibition is under Tile 18, United States Code (U.S.C.), Section 922(g)(4): 'A person who has been adjudicated as a mental defective or who has been committed to a mental institution.'" (Id.) Now, Mr. Wilborn alleges, consistent with the limitations of Section 302, he was neither adjudicated a "mental defective" nor involuntarily committed to a mental institution as is required under a Section 303 commitment. (Id.)

For Section 922(g)(4) restrictions to apply, the individual must be: 1) adjudicated as a "mental defective"; and 2) committed to a mental institution. *Franklin v Sessions*, 291 F.Supp.3d 705, 714 (W.D. Pa. 2017) In *Franklin*, the court found the Section 922(g)(4) restrictions inapplicable because Mr. Franklin's examination failed to satisfy the above prongs. *Id.* Similarly, Mr. Wilborn argues his Section 302 examination and treatment does not trigger a prohibition under 18 U.S.C. § 922(g)(4) because his involuntary examination failed to satisfy the above prongs. (ECF Docket No. 2, at 3.)

First, a Section 922(g)(4) restriction applies when an individual has been adjudicated as a "mental defective" Because Mr. Franklin's mental health examination was based on the opinions of a "single officer, a single county officer with an unspecified position in the county administrator's office, and a single treating physician – without the involvement of any judicial or quasi-judicial decision-maker or any semblance of an adversarial proceeding," Mr. Franklin's examination hardly constituted an adjudication under Section 302. *Id* at 714-15. Without the involvement of a judicial decision-maker, the court declined to consider Mr. Franklin's Section 302 examination an "adjudication" under the plain meaning of the word. *Id* at 715.

Adjudication, the court continued, is the "involvement of a judicial decision-maker, the resolution of a dispute after consideration of argument by the parties involved, and a deliberative proceeding with some form of due process." *Id.*; *see also FDIC v. Meyer*, 510 U.S 471, 476 (1994) (construing statutory terms in accordance with their ordinary or natural meaning in the absence of a statutory definition); *Asgrow Seed Co v Winterboer*, 513 U.S. 179, 187 (1995); *Commissioner v Soliman*, 506 U.S. 168, 174 (1993). Citing the Code of Federal Regulation, the court also defined "adjudication" as the "determination by a court, board, commission, or other lawful authority." *Id.* (citing 27 C.F.R. § 478.11) The court looked to Mr. Franklin's three adjudicators – the police officer, the unspecified officer in the county administrator's office, and the physician – and determined nothing in the record indicated these individuals jointly comprised a board or commission which would have been sufficient to adjudge someone "mentally defective." *Id.* Given the mental health examination in *Franklin* was not made by a court, board, or commission functioning in a neutral judicial or quasi-judicial role, Section 922(g)(4) was inapplicable to Mr. Franklin. The court also determined none of the adjudicators in Mr. Franklin's case could be considered "other lawful authority" for purposes of Section 922(g)(4). *Id* The court continued: "[i]nterpreting Section 922(g)(4) such that individual physicians and other non-neutral actors have lawful authority to wholly strip a person of their ability to a possess a firearm in perpetuity based on a non-adversarial, *ex parte* decision would raise serious constitutional concerns with the statute, which the canon of constitutional avoidance requires the Court to avoid if possible." *Id* at 716.

Second, a Section 922(g)(4) restriction applies when an individual has been committed to a mental institution. In *Franklin*, the court determined Mr Franklin had not been "committed" to a mental institution. *Id* at 717. Mr.

2

Franklin was involuntarily admitted to UPMC Bedford then transferred to Somerset Hospital for an emergency mental health examination. *Id.* As the court explained, although UPMC Bedford and Somerset Hospital meet the definition of mental institution under Section 922(g)(4), Mr. Franklin was not committed by a "court, board, commission, or other lawful authority." Also, the court continued, "committed to a mental institution . . . does not include a person in a mental institution for observation." *Id.*; *see also United States v Rehlander*, 666 F.3d 45, 48 (1st Cir. 2012) (distinguishing temporary, emergency hospitalizations from formal commitments); *United States v Giardina*, 861 F.2d 1334, 1337 (5th Cir. 1988) (holding that there is nothing in 18 U.S.C. § 922(g) which indicates an intent to prohibit the possession of firearms by persons who had been hospitalized for observation and examination where they were found not to be mentally ill and were not committed); *United States v Hansel*, 474 F.2d 1120, 1122–23 (8th Cir. 1973).

The court in *Franklin* concluded Mr. Franklin's less-than-24-hour-stay at UPMC Bedford and Somerset Hospital for emergency mental health examination fell within the noted exceptions to the rule. *Id.* The court refused to apply Section 922(g)(4) as Mr. Franklin was not adjudicated a "mental defective" and was never "committed" to a mental institution.

Here, this Court lacks much of the same substantive facts the court in *Franklin* enjoyed when analyzing the Section 922(g)(4) restrictions as the restrictions were addressed at summary judgment. In *Franklin*, the court discussed at length the factual circumstances surrounding Mr. Franklin's less-than-24-hour involuntary mental health examination. The court analyzed the individuals involved in the adjudication, the nature of the examination, the mental institutions that conducted the examination, and Mr Franklin's personal and medical history. Here we are armed with little more than vague references to an involuntary examination and denial of rights in violation of the Second and Fifth Amendments. Unlike *Franklin*, the facts presented here are bereft of any reference to Mr. Wilborn's involuntary examination and treatment. Indeed, the only evidence with which we are presented is the length of Mr. Wilborn's "commitment" and a vague reference to the county where he was examined.

Given the lack of facts presented here as compared to *Franklin*, this Court will deny Mr. Wilborn's motion for preliminary injunction without prejudice with leave to re-file after further discovery is conducted. More discovery is required before we can determine whether Mr. Wilborn has a reasonable probability of success on the merits.