IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRANDON M. WILBORN,

    Plaintiff,

v.

WILLIAM BARR, et al.,

    Defendants.

CIVIL ACTION
NO. 18-3597

**MEMORANDUM**

**SCHMEHL, J.** /s/ JLS                                                                **AUGUST 5, 2019**

Plaintiff Brandon Wilborn moves for summary judgment[1] against William Barr, Attorney General of the United States, Thomas E. Brandon, Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, Christopher Wray, Director of the Federal Bureau of Investigation, and the United States of America ("Defendants") (Docket No. 2).[2] Mr. Wilborn asserts that 18 U.S.C. § 922(g)(4), according to its text, does not permanently restrict an individual's ability to possess firearms based on a brief emergency mental health examination. Mr. Wilborn also asserts that his less-than-72-hour involuntary stay in a hospital for an involuntary emergency mental health examination under Section

---

[1] After a Rule 16 conference with counsel for all parties, this Court determined that no further discovery was necessary and converted Plaintiff's Motion for Preliminary Injunction to a Motion for Summary Judgment under Federal Rule of Civil Procedure 56. Parties were permitted to submit additional supplemental authority and material pertinent to the motion, and this Court conducted an oral argument on the motion for summary judgment on April 4, 2018.

[2] Mr. Wilborn named Jefferson B. Sessions, III, Attorney General of the United States, Thomas E. Brandon, Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Christopher Wray, Director of the Federal Bureau of Investigation, and the United States of America as Defendants. Under Federal Rule of Civil Procedure 25(d), their respective successors are automatically substituted.

302 of Pennsylvania's Mental Health Procedures Act ("MHPA") should not permanently deprive him from legally acquiring, possessing, or using a firearm in his private capacity.

So, the central issues before this Court are: 1) whether an emergency mental health examination under Section 302 of the MHPA constitutes an "adjudication" or "commitment" for purposes of 18 U.S.C. § 922(g)(4); and 2) whether Mr. Wilborn is subject to Section 922(g)(4) following his examination under Section 302. Based on the plain meaning of the terms in Section 922(g)(4) and the guidance provided by 27 C.F.R § 478.11, we conclude that a Section 302 commitment does not trigger Section 922(g)(4), and Mr. Wilborn's 2003 involuntary examination does not trigger Section 922(g)(4). We will not address the underlying constitutional issues or claims surrounding Section 302 of the MHPA.

### A. **BACKGROUND**

Federal law prohibits possession of firearms by individuals previously adjudicated mentally ill or committed to a mental institution. Traditionally, mentally ill individuals were prohibited from possessing firearms because they were considered a danger to themselves and to others. Yet, "the right to possess arms (among those not properly disqualified) is no longer something that can be withdrawn by government on a permanent and irrevocable basis without due process." *District of Columbia v. Heller*, 554 U.S. 570 (2008). Our Second Amendment jurisprudence is based on the Supreme Court's ruling in *District of Columbia v. Heller* which guarantees an individual the right—not unlimited— to keep and bear arms. *Heller*, 554 U.S. at 595. But, *Heller* did not disrupt the longstanding prohibitions on possession of firearms by the mentally ill as this prohibition was considered presumptively lawful because it affected classes of individuals who, historically, have not

had the right to keep and bear arms. *Heller*, 554 U.S. at 627 n.26; *see also United States v. Barton*, 633 F.3d 168, 171 (3d Cir. 2011) (listing of presumptively lawful regulation that reflects historical understanding of Second Amendment right), *overruled on other grounds by Binderup v. Attorney General*, 836 F.3d 336, 349-50 (3d Cir. 2016).

On or about April 7, 2003, Mr. Wilborn was involuntarily examined and treated under Section 302 of the MHPA. (ECF Docket No. 1, ¶17.) Under the current law, Mr. Wilborn's examination, based only on the *ex parte* decision of a single physician, barred him from ever legally owning, possessing, using, or purchasing a firearm or ammunition. (Id. at ¶¶17-19.) According to Mr. Wilborn, and consistent with the proceedings of Section 302, Mr. Wilborn did not speak with a lawyer, present witnesses, submit evidence, or come before a neutral arbiter prior to his release. (ECF Docket No. 2, at 2.) On May 3, 2018, Mr. Wilborn attempted to purchase a firearm, but his application was denied by the National Instant Criminal Background Check System ("NICS"). (Id. at ¶20.) After Mr. Wilborn appealed the denial, NICS informed Mr. Wilborn that his application was denied under 18 U.S.C. § 922(g)(4) because of his 2003 examination under Section 302. (Id. at ¶21.)

On August 23, 2018, Mr. Wilborn filed the instant action alleging he has "since abstained from attempting to purchase a firearm for fear of arrest, prosecution, incarceration, and/or fine, pursuant to 18 U.S.C. § 922(g)(4) . . . should he attempt to purchase or possess a firearm, based on the final determination from FBI." (Id. at ¶27.) Mr. Wilborn's complaint sets forth a cause of action for injunctive and declaratory relief. Mr. Wilborn also moved for a preliminary injunction arguing he was "erroneously stripped of a constitutional right." (ECF Docket No. 2, at 4.) Mr. Wilborn argues an involuntary

examination and subsequent treatment under Section 302 of the MHPA "does not constitute an involuntary commitment for the purposes of the prohibition contained in 18 U.S.C. § 922(g)(4)." (Id. at 6.) In the alternative, Mr. Wilborn argues a commitment under Section 302 of the MHPA is insufficient under the Fifth Amendment—given the lack of due process—to trigger a disability under 18 U.S.C. § 922(g)(4). (Id. at 7.)

As noted above, we will not address Mr. Wilborn's Second Amendment *as-applied challenge* and will only analyze whether a commitment under Section 302 of the MHPA is enough to trigger Section 922(g)(4) and whether Mr. Wilborn is subject to Section 922(g)(4) following his Section 302 examination.[3]

**B.   STANDARD OF REVIEW**

Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[3] Like the plaintiff in *Franklin v. Sessions*, Mr. Wilborn's Motion for Preliminary Injunction states that if Mr. Wilborn's ability to possess a firearm is not restricted under federal law, "the court should not reach the constitutional issues—pursuant to the constitutional avoidance doctrine—to the extend it can provide relief on non-constitutional grounds." (ECF Docket No. 2, at 7.) And so, according to Mr. Wilborn, if we determine Section 302 does not trigger Section 922(g)(4), we should not address Mr. Wilborn's Second Amendment *as-applied* challenge as this determination would constitute a full resolution of Mr. Wilborn's case.

323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

C. **ANALYSIS**

Mr. Wilborn argues his involuntary examination and treatment under Section 302 of Pennsylvania's MHPA does not trigger a federal firearm prohibition under 18 U.S.C. § 922(g)(4). (ECF Docket No. 2, at 1.) Section 922(g)(4) prohibits the possession of firearms by anyone "who has been adjudicated as a mental defective *or* who has been committed to a mental institution." 18 U.S.C. § 922(g)(4) (emphasis added). More specifically, 18 U.S.C. § 922(g)(4) states:

> It shall be unlawful for any person ... who has been *adjudicated* as a mental defective or who has been *committed* to a mental institution ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(4) (emphasis added). We are required to determine: 1) whether an examination under Section 302 of the MHPA triggers Section 922(g)(4) which requires the individual be "adjudicated as a mental defective" or "committed to a mental institution";

5

and 2) whether Mr. Wilborn was ever "adjudicated as a mental defective" *or* "committed to a mental institution" for purposes of Section 922(g)(4).[4]

Looking at the text of Section 922(g)(4) and the Code of Federal Regulations, it is our view that a Section 302 examination under the MHPA does not trigger a Section 922(g)(4) prohibition, and the procedures of Section 302 of the MHPA as applied to Mr. Wilborn do not constitute an adjudication that Mr. Wilborn is a "mental defective" or "committed to a mental institution," thereby not implicating Section 922(g)(4)'s firearm restrictions.

1. "Adjudicated as a Mental Defective" and "Committed to a Mental Institution" under 18 U.S.C. § 922(g)(4)

While some of the terms in Section 922(g)(4) may have clear plain meanings, the Code of Federal Regulations defines "adjudicated as a mental defective" and "committed to a mental institution." First, the Code of Federal Regulations defines "adjudicated as a mental defective" to include, among other definitions, "[a] determination by a court, board, commission, or other lawful authority that a person, as a result of . . . mental illness . . . [i]s a danger to himself or to others." *Beers v. Attorney General United States*, 927 F.3d 150 (3d Cir. 2019) (citing 27 C.F.R. § 478.11). Likewise, Black's Law Dictionary defines "adjudicate" as "the legal process of resolving a dispute; the process of judicially deciding a case," while Merriam-Webster Online Dictionary defines adjudicate as: "to make an official decision about who is right in (a dispute)"; "to settle judicially"; or "to act as judge." Black's Law Dictionary (10th ed. 2014); *See also* Merriam–Webster Online Dictionary, https://www.merriam-webster.com/dictionary/adjudicate. So based on the

---

[4] Mr. Wilborn contends that the "adjudicated as a mental defective" prong of Section 922(g)(4) is not at issue here. However, we will still analyze this prong as it relates to Mr. Wilborn.

6

above definitions, "adjudicate as a mental defective" requires a determination by some authoritative board and not a temporary and *ex parte* hospitalization.

In *Franklin v. Sessions*, our Western District determined that the plaintiff's 120-hour mental health examination "without the involvement of any judicial or quasi-judicial decision maker or semblance of an adversarial proceeding" scarcely constituted an "adjudication." *Franklin v. Sessions*, 291 F.Supp.3d 705, 715 (W.D. Pa. 2017). In *Franklin*, the decision to submit plaintiff to a 120-hour involuntary mental health examination was made by a "police officer, an unspecified officer in the county administrator's office, and a physician" and not a court, board, or commission, where each inherently function in a neutral judicial or quasi-judicial role. *Id.* The court, guided by the Code of Federal Regulations, refused to construe those three individuals as a "court, board, or commission, or other lawful authority" authorized to permanently deprive the plaintiff from possessing private firearms. *Id.* Specifically, the court stated:

> An 'adjudicat[ion] as a mental defective' under Section 922(g)(4) requires something more than two lay persons and a physician acting without any adversarial proceeding, without the opportunity to present any evidence by the party subject to the mental health examination, and without the involvement of any judicial or quasi-judicial decision-maker or processes.

*Franklin*, 291 F.Supp.3d at 716 (citing *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 681–82 (6th Cir. 2016) (*en banc*) (stating that the federal regulations make it clear that Section 922(g)(4) "applies only to persons who are involuntarily committed by an appropriate judicial authority following due process safeguards"). We wholeheartedly agree with the court in *Franklin*.

Second, the Code of Federal Regulations defines "committed to a mental institution" as a "[f]ormal commitment of a person to a mental institution by a court, board,

7

commission, or other lawful authority," including "commitment to a mental institution involuntarily" and "commitment for mental defectiveness or mental illness." *Beers*, 927 F.3d at 157 (citing 27 C.F.R. § 478.11). But, "committed to a mental institution" does not "include a person in a mental institution for observation or a voluntary admission to a mental institution." *Id.* The pertinent regulations make clear that a voluntary hospitalization does not amount to being "committed to a mental institution" and that an affirmative commitment decision by some authoritative body is also required. 27 C.F.R. § 478.11.

In *United States v. Rehlander*, the First Circuit, citing *District of Columbia v. Heller*, stated, "the right to possess arms (among those not properly disqualified) is no longer something that can be withdrawn by government on a permanent and irrevocable basis without due process." *United States v. Rehlander*, 666 F.3d 45, 48 (1st Cir. 2012) (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). As part of its analysis, the the court compared Maine's two procedures for involuntary psychiatric hospitalization: Section 3863 and Section 3864 commitments.[5] The court determined that an emergency hospitalization under Section 3863, which permits three-day involuntary hospitalizations without any adversary proceeding—but still requires *application to a judge* and a

---

[5] The First Circuit, analyzing Section 3863, stated: "Section 3863 provides for temporary hospitalization following *ex parte* procedures—that is to say, without an adversary proceeding. The procedures include an application by a health or law enforcement officer, a certifying medical examination by a medical practitioner, and an endorsement by a judge or justice of the peace confirming that these procedures have been followed." *United States v. Rehlander*, 666 F.3d 45, 46 (1st Cir. 2012) (citing Me.Rev.Stat. tit. 34–B, § 3863(1)-(3)). And in analyzing Section 3864, the First Circuit stated: "For full-scale commitments (as opposed to temporary hospitalization), Maine requires a traditional adversary proceeding, culminating in a judicial determination as to whether the subject both is mentally ill and poses a danger to himself or others, This procedure is described in the statute as a 'commitment,' not 'emergency hospitalization,' and one consequence is that under Maine law, a section 3864 commitment causes a loss of the right to possess firearms. *Id.* (citing Me.Rev.Stat. tit. 34–B, § 3864; Me.Rev.Stat. tit. 15, § 393(1)(E)) (internal citations omitted).

certification by a "medical practitioner"—lacks the necessary procedures for permanent deprivation under Section 922(g)(4). *Id.* (emphasis added). In comparing the two, the court concluded: 1) a Section 3864 commitment—which is only permitted after a court holds an adversary hearing where counsel is provided and the patient is given an opportunity to testify and call and cross-examine witnesses—is sufficient to trigger Section 922(g)(4); and 2) a Section 3863 commitment, absent further protective procedures or remedies, does not trigger Section 922(g)(4). *Id.* at 49. The court stated, "Section 922 should not be read to encompass a temporary hospitalization attended only by the *ex parte* procedures of section 3863." *Rehlander*, 666 F.3d at 49. And in *United States v. McMichael*, the court analyzed the construction of the term "committed" in Section 922(g)(4) and understood it to require "a third party direct that the individual be treated by a mental institution, and that the third party be some official or authoritative body making the decision on an evidentiary record." *United States v. McMichael*, 350 F.Supp.3d 647, 656 (W.D. Mich. 2018). The court specified that "a commitment does not occur until the completion of an adversary process that results in an adjudicative decision in favor of hospitalization." *Id.*

Further supporting this interpretation of "committed to a mental institution" is a 2014 Notice of Proposed Rulemaking proposal by the Department of Justice where the DOJ understood the term as follows:

> Persons are not considered to have been "committed to a mental institution" as a result of a voluntary admission to a mental institution or a temporary admission for observation *unless the temporary admission for observation turns into a qualifying commitment as a result of a formal commitment by a court, board, commission, or other lawful authority*.

(2010R-21P), 79 FR 774-01, 2014 WL 31980, Amended Definition of "Adjudicated as a Mental Defective" and "Committed to a Mental Institution." This is also consistent with

9

the current ATF form which defines "Adjudicated as a Mental Defective" and "Committed to a Mental Institution," and provides exceptions to individuals ostensibly "adjudicated" or "committed." Specifically, the exception states:

> a person who has been adjudicated as a mental defective or committed to a mental institution by a department or agency of Federal Government is not prohibited by the adjudication or commitment if either:. . . *(d) the adjudication or commitment, respectively, is based solely on a medical finding of disability, without an opportunity for a hearing by a court, board, commission, or other lawful authority, and the person has not been adjudicated as a mental defective consistent with section 922(g)(4) of title 18, United States Code.*

https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download (last visited July 10, 2019) (emphasis added).

While the Code of Federal Regulations and ATF form definitions are not controlling, both provide guidance and allow us to conclude that an "adjudication" and "commitment" under 922(g)(4) require affirmative commitment decisions by some authoritative body.

2. Section 302 and 303 of the Mental Health Procedures Act ("MHPA")

Applying the terms of Section 922(g)(4) as defined by the Code of Federal Regulations requires us to analyze Sections 302 and 303 of the MHPA to determine whether a Section 302 examination triggers Section 922(g)(4). Under Section 302 of the MHPA, an emergency examination may take place one of three ways: 1) "upon the certification of a physician stating the need for such examination"; 2) "upon a warrant issues by the county administrator authorizing such examination"; or 3) "without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination." PA ST 50 P.S. § 7302. Section 302 allows involuntary examination and treatment for up to 120 hours upon authorization of a

10

physician or a warrant, and by its express terms, is temporary and observational in nature. *Franklin*, 291 F.Supp.3d at 717.

Unlike Section 302, a commitment under Section 303 requires review by a judge or mental health review officers. Section 303 permits an extended involuntary emergency examination for individuals treated under Section 302 whenever the facility determines the need for emergency treatment is likely to extend beyond the 120-hour maximum allowed time under a Section 302 examination. PA ST 50 P.S. § 7303. And unlike Section 302, a Section 303 commitment is not to exceed 20 days after notice is given, and the individual is allowed the right to counsel and an adversarial hearing before a "judge or mental health review officer," which upon request must be reviewed by a court of common pleas within 72 hours. *Id.*; *see also Franklin*, 291 F.Supp.3d at 722. According to the general provisions of the MHPA, the legal proceedings of Section 303 may be conducted by a "judge of the court of common pleas or by a mental health review officer authorized by the court to conduct the proceedings." And the mental health review officers "shall be members of the bar of the Supreme Court of Pennsylvania" and should be familiar in the field of mental health. PA ST 50 P.S. § 7109.

In examining the language in Sections 302 and 303 of the MHPA, Section 303 clearly provides greater protections to individuals than Section 302. Where Section 303 grants individuals the right to counsel and the right to an adversarial hearing before a "judge or mental health review officer," Section 302 requires only an *ex parte* decision by a physician or a warrant by a county administrator and a physician's authorization. Section 302, by its express terms—and distinct from Section 303—does not require review by a judge or mental health review officer. And so, consistent with other courts, the procedures

provided by Section 302 of the MHPA—emergency mental health examination lasting no longer than 120 hours without the right to counsel or an adversarial proceeding—cannot constitute an "adjudication" or "commitment" for purposes of Section 922(g)(4). The lack of decision by some authoritative body makes a Section 302 examination alone insufficient to impose a permanent restriction on the possession of firearms.

3. Mr. Wilborn's Federal Firearm Prohibition Under Section 922(g)(4)

As addressed above, Section 922(g)(4) prohibits the possession and use of a firearm for an individual "adjudicated as a mental defective" or "committed to a mental institution." 18 U.S.C. § 922(g)(4); see also *Franklin*, 291 F.Supp.3d at 714. In 2003, Mr. Wilborn was involuntarily examined and treated under Section 302 of the MHPA. (ECF Docket No. 2, at 2.) The institution "involuntarily examined and treated" Mr. Wilborn for 72 hours before releasing him. (Id.) According to Mr. Wilborn, and consistent with Section 302, Mr. Wilborn did not speak with a lawyer, present witnesses, submit evidence, or come before a neutral arbiter prior to his release. (Id.) Then in 2018, Mr. Wilborn attempted to "purchase, possess and utilize firearms for self-defense and for defense of his family" and his home. (Id.) The NICS, administered by the FBI, denied Mr. Wilborn's application. (Id.) Now, Mr. Wilborn contends, consistent with the limitations of Section 302, he was neither "adjudicated as a mental defective" nor involuntarily "committed to a mental institution" required to trigger Section 922(g)(4). (Id.)

Applying the terms of Section 922(g)(4) as defined by the Code of Federal Regulations above, and because Mr. Wilborn was involuntarily examined and treated only under Section 302—which expressly omits involvement of a judicial or quasi-judicial

actor—we conclude Mr. Wilborn was neither "adjudicated as a mental defective" nor "committed to a mental institution" as required under Section 922(g)(4).

### a. Mr. Wilborn was not "adjudicated as a mental defective"

The first prong of Section 922(g)(4) restricts a person's ability to possess a firearm when that person has been "adjudicated as a mental defective." 18 U.S.C. § 922(g)(4). Based on the facts underlying Mr. Wilborn's Section 302 commitment, and the language of the statute, Mr. Wilborn was never "adjudicated as a mental defective" for purposes of Section 922(g)(4). Again, while Mr. Wilborn argues this prong is not at issue here, we will still address this prong in the context of Mr. Wilborn's Section 302 examination.

Under Section 302 of the MHPA, individuals may be submitted to a mental health examination for up to 120-hours without the involvement of any judicial or quasi-judicial decision maker. PA ST 50 P.S. § 7302. As discussed above, a plain reading of the term "adjudication" provides the "involvement of a judicial-decision maker, the resolution of a dispute after consideration of argument by the parties involved, and a deliberative proceeding with some form of due process." *Franklin*, 291 F.Supp.3d at 715 (W.D. Pa. 2017) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994) (construing statutory terms in accordance with their ordinary or natural meaning in the absence of a statutory definition); *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995); *Commissioner v. Soliman*, 506 U.S. 168, 174 (1993)). And as addressed above, "adjudication" is also defined as a "determination by a court, board, commission, or other lawful authority." *Id* (citing 27 C.F.R. § 478.11).

The procedures provided by Section 302 that were applied to Mr. Wilborn do not constitute an adjudication under Section 922(g)(4). (ECF Docket No. 2, at 2.) Mr. Wilborn

was involuntarily admitted under Section 302 and did not speak with a lawyer, present witnesses, submit evidence, or come before a neutral arbiter prior to his release. (Id.) According to the record, Mr. Wilborn was treated for approximately 72 hours and released without further treatment. Like *Franklin* where the court determined plaintiff was not "adjudicated as a mental defective" because the decision to submit him to a 120-hour involuntary mental health examination was made by a police officer, unspecified officer in the county administrator's office, and a physician, here the 72-hour involuntary examination and *ex parte* decision by a single physician does not amount to an "adjudication" under Section 922(g)(4).

Because Mr. Wilborn was involuntarily examined and treated for approximately 72 hours and was not "adjudicated as a mental defective" by a court, board, commission, or other lawful authority, the first prong of Section 922(g)(4) prong is inapplicable.

### b. Mr. Wilborn was not "committed to a mental institution"

The second prong of Section 922(g)(4) restricts an individual's ability to possess a firearm when that individual has been "committed to a mental institution." 18 U.S.C. § 922(g)(4). Based on the facts underlying his Section 302 commitment, and the language of the statute, Mr. Wilborn was never "committed to a mental institution" for purposes of Section 922(g)(4).

The phrase "committed to a mental institution" requires a formal commitment decision by a "court, board, commission, or other lawful authority." *Franklin*, 291 F.Supp.3d at 717 (quoting 27 C.F.R. § 478.11). "Section 302 of the MHPA provides only for involuntary medical treatment lasting up to 120 hours." *Id.* (citing PA ST 50 P.S. § 7302(d)). The MHPA also describes Section 302 medical care as temporary and

observational in nature. *Id.* (citing PA ST 50 P.S. § 7302(d)). And while not controlling, Section 302 never uses the term "commitment" and instead uses the terms "involuntary emergency examination and treatment" or "emergency examination." *Id.* (citing PA ST 50 P.S. § 7302(d)).

As no proper "adjudicator" was involved in Mr. Wilborn's examination, and because no authoritative body "committed" Mr. Wilborn to a mental institution, Mr. Wilborn was never "committed to a mental institution" as required under Section 922(g)(4) and defined by the relevant federal regulations. Similarly, the court in *Franklin* noted the plaintiff's lack of formal commitment decision by a court, board, or commission, and concluded that the plaintiff had not been "committed to a mental institution" as defined by the relevant federal regulations. *Id.* And as noted by the First Circuit in *Rehlander*, the term "committed to a mental institution" does not include individuals hospitalized for observation. *Id.* (citing *Rehlander*, 666 F.3d at 48–49). The court in *Rehlander* distinguished temporary, emergency hospitalizations from formal commitments, and refused to permanently deprive the petitioner's right to bear arms "based solely on procedures suitable for temporary hospitalization under emergency conditions" that lack further protective procedures. *Rehlander*, 666 F.3d at 49. The court in *Franklin*, citing *Rehlander*, determined that the plaintiff was not "committed to a mental institution" because plaintiff was temporarily examined and released without further treatment. *Franklin*, 291 F.Supp.3d at 717.

Applying the definitions under 27 C.F.R. § 478.11, Section 302 does not provide for a "commitment to a mental institution," and so Mr. Wilborn was never "committed to a mental institution" for purposes of Section 922(g)(4).

**D. CONCLUSION**

In the accompanying order, this Court grants Plaintiff Brandon Wilborn's Motion for Summary Judgment.

Section 302 of the MHPA does not meet 18 U.S.C. § 922(g)(4)'s permanent restriction on an individual's ability to acquire, possess, or use a firearm. While Section 302 of the MHPA may be enough to justify an involuntary examination and treatment, the nature of the its non-adversarial *ex parte* procedure without notice, or opportunity to present evidence, does not constitute an "adjudication" under Section 922(g)(4); nor does Section 302's 120-hour maximum "involuntary emergency examination and treatment" constitute a "commitment to a mental institution" under Section 922(g)(4).[6]

Also, Mr. Wilborn's brief involuntary emergency examination and treatment under Section 302 of the MHPA does not trigger Section 922(g)(4) because Mr. Wilborn was never "adjudicated as a mental defective" or "committed to a mental institution." 18 U.S.C. § 902(g)(4). We find that the *ex parte* decision by a single physician following a Section 302 examination is insufficient to meet the requirements to permanently prohibit Mr. Wilborn from legally acquiring, possessing, or using a firearm under 18 U.S.C. § 922(g)(4).

---

[6] Like *Franklin v. Sessions*, we offer no opinion as to the underlying constitutional claims or issues in this case. Specifically, the court in *Franklin* stated, "[t]he Court . . . does not question whether Section 302 of the MHPA can require a person to undergo an involuntary emergency examination and treatment." *Franklin v. Sessions*, 291 F.Supp.3d 705, 724 (W.D. Pa. 2017). The court continued in a footnote, "[t]o the contrary, Third Circuit precedents suggest that Section 302 of the MHPA's lack of a provision for notice and a hearing may be reasonable and not violate due process for the purposes of requiring an involuntary emergency examination because Section 302 of the MHPA was created to deal with emergencies and continues only for a short period of time." *Id.* at 724 n.21 (citing *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 174 (3d Cir. 2004); *Doby v. DeCrescenzo*, 171 F.3d 858, 870 (3d Cir. 1999); *Project Release v. Prevost*, 722 F.2d 960, 974 (2d Cir. 1983); *Covell v. Smith*, 1996 WL 750033 (E.D. Pa. Dec. 30, 1996); *Luna v. Van Zandt*, 554 F.Supp. 68, 76 (S.D. Tex. 1982)).